FILED
U.S. DISTRICT COURT

2015 MAR 26 P 2: 36

DISTRICT OF UTAH

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

| | |
|---|---|
| MICHAEL P. NELDER,<br><br>              Plaintiff,<br><br>v.<br><br>KELLY WORLEY,<br><br>              Defendant. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:12-CV-245 DB<br><br>Judge Dee Benson |

       Plaintiff, an inmate at Central Utah Correctional Facility (CUCF), filed this *pro se* civil-rights complaint under 42 U.S.C.S. § 1983 (2014). The matter is before the Court on Defendant's summary-judgment motion, which refers to witness declarations and documentary evidence submitted as exhibits to Defendant's *Martinez* report. (Docket Entry # 36.) In response, Plaintiff submitted a document styled "Motion for Summary Judgment." (Docket Entry # 54). Having reviewed the record, the Court grants Defendant's summary-judgment motion and dismisses this lawsuit with prejudice.

## BACKGROUND[1]

       In July 2011, a stabbing at Utah State Prison (USP) involved alleged members of rival Juggalo and Sureno gangs and resulted in the death of a Sureno gang member. To restore security and avert retaliatory attacks, Utah Department of Corrections (UDOC) executives

---

[1] The Background facts are from Defendant's summary-judgment motion, (Docket Entry # 53), and incorporate undisputed facts asserted in Declarations and *Martinez* Report. *(See* Docket Entry #s 36, 37, 38, 39, 42, & 44.)

implemented an executive "safety caution" order segregating all known and suspected Juggalo

gang inmates from general-population inmates and housing them together as a security

precaution.

To facilitate the executive order, Defendant, acting in his role as a sergeant in CUCF's

Security Threat Groups Intelligence Unit (STG), interviewed several inmates, including Plaintiff,

to identify suspected and known gang members.  Plaintiff denied being a gang member, but

stated that he was good friends with Juggalo gang members.  Based on this discussion,

Defendant identified Plaintiff as being affiliated with the Juggalo gang and noted Plaintiff's

"suspected" gang status in USP records.  Defendant had no further involvement with Plaintiff.

Having been identified as a suspected Juggalo, Plaintiff was transferred by prison

officials to Elm Unit, Section One, at CUCF, a medium-security facility that had been designated

for housing Level III Juggalo inmates under the UDOC safety-caution order.  A few days later,

Plaintiff wrote a letter to his Juggalo gang member friends outside prison and, in that

correspondence, used phrases and salutations common to Juggalo gang members.  DOC officials

cited this correspondence as confirming Plaintiff's suspected Juggalo affiliation.

For the first several months after the DOC gang-safety-caution order was implemented,

Plaintiff was housed in Elm Section One where the conditions of confinement were generally at

least equivalent to those available to Level III inmates in general population.  While he was in

the Elm facility, however, Plaintiff was involved in and written up for several disciplinary

violations which led to his reclassification as a Level II (high security) inmate in October 2011.

That reclassification necessitated Plaintiff's transfer to the more restrictive, maximum security,

Dogwood facility where Plaintiff was housed until January 2013.

2

Plaintiff brought this lawsuit in 2012, asserting causes of action claiming cruel and unusual punishment in violation of the Eighth Amendment, and violation of due process rights under the Fifth and Fourteenth Amendments. The alleged violations resulted from the "suspected Juggalo" designation and consequent placement of Plaintiff in segregated housing at CUCF. Plaintiff claims Defendant is "directly responsible" for these alleged violations of his constitutional rights.

## UNDISPUTED MATERIAL FACTS[2]

1. UDOC executives issued an executive "safety caution" in response to a gang-related killing at USP in Spring 2011. (Am. Compl. ¶ 5; Painter Decl., Docket Entry # 44, ¶¶ 5–6.) That incident involved a Juggalo inmate who killed a Sureno gang member. *Id.* The safety-caution order housed all Juggalo-affiliated inmates together and away from general-population inmates to protect the Juggalos from retaliatory attacks. *Id.*

2. Defendant was employed as a sergeant in the STG at CUCF. (Am. Compl. ¶ 2; Worley Decl., Docket Entry # 37, ¶ 1.)

3. After the killing, Defendant interviewed several inmates, including Plaintiff, as required to implement the UDOC safety-caution order. (Worley Decl. ¶¶ 9, 14.)

4. Plaintiff stated that he is close friends with Juggalo gang members and that he corresponded with them. (Worley Decl. ¶ 14.)

5. Defendant categorized Plaintiff as a "suspected" Juggalo gang member on prison records. (Am. Compl. ¶¶ 7, 9; Worley Decl. ¶ 14.)

---

[2] Undisputed facts material to the Motion for Summary Judgment are taken from the *Martinez* Report (Docket Entry # 36), Declarations (Docket Entry #s 37, 38, 39, 42, 44), and documentary exhibits to the *Martinez* Report (Docket Entry # 43, Exhs. A–H, filed under seal).

6. Plaintiff was then transferred to Elm facility at CUCF Section One, where other Level III Juggalo inmates were housed. (Worley Decl. ¶ 15; *Martinez* Report, Ex. G.)

7. Plaintiff later wrote to friends outside of prison who are Juggalo gang members. (Am. Compl. ¶ 7.) In his letter, Plaintiff used salutations and other phrases commonly used among Juggalos and indicative of Juggalo gang affiliation. (Am. Compl. ¶ 6; Worley Decl. ¶ 16.)

8. Before his July 2011 interview with Plaintiff, Defendant did not know Plaintiff. Defendant was not assigned to Elm or Dogwood housing units and was not part of Plaintiff's management team. (Worley Decl. ¶¶ 5, 22, 27.)

9. Other than gathering gang-affiliation information in his interview in July 2011, Defendant had no role in determining Plaintiff's security classification, housing assignment, privileges or programming, or any discipline-related issues. (Worley Decl. ¶¶ 21, 22, 27.)

## LEGAL STANDARD

### Summary Judgment and Qualified Immunity

Under Rule 56, the Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. Rule 56(a). "When a defendant asserts qualified immunity at the summary judgment stage, the initial Rule 56 burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified

4

immunity." _Holland ex rel. Overdorff v. Harrington_, 268 F.3d 1179, 1186 (10th Cir. 2001).

Defendant is entitled to qualified immunity.  As a matter of law, Plaintiff cannot show a

constitutional violation, or point to clearly established precedent that supports his claims.

## ANALYSIS

### 1. Plaintiff Does Not Have a Liberty Interest in Prison Housing and Therefore Cannot State a Due Process Violation.

In his Amended Complaint, Plaintiff alleges Defendant violated his right to due process

when Defendant "wrongfully accused" Plaintiff of being a Juggalo gang member, which,

Plaintiff asserts, led to his consequent placement in "unnecessary segregation."  (Am. Compl.

¶¶ 9–11.)  To invoke the protections of procedural due process, however, a plaintiff must first

establish the existence of a recognized property or liberty interest.  _Setliff v. Mem'l Hosp. of

Sheridan Cnty._, 850 F.2d 1384, 1394 (10th Cir.1988).  A transfer to harsher conditions of

confinement only gives rise to a liberty interest when an inmate faces an "atypical and

significant hardship . . . in relation to the ordinary incidents of prison life." _Rezaq v. Nalley_, 677

F.3d 1001, 1011 (10th Cir. 2012) (quotation marks & citations omitted).  And legitimate

penological interests invoked in light of an inmate's purported gang affiliation are a "relevant

[due process] consideration under settled Tenth Circuit precedent." _Id._; _see also Derrick v.

Ward_, No. 03-6090, 2004 U.S. App. LEXIS 224, at * (10th Cir. Jan. 8, 2004).

Here, UDOC had legitimate penological reasons for determining inmates' gang status

and taking precautions to minimize risk of retaliatory gang-related assaults after the 2011 gang-

related killing at USP.  UDOC's response to that incident—ordering segregation of gang-

affiliated inmates to keep them out of the general-inmate population and protect them from

retaliatory attacks—appears to have been an appropriate response, rooted in legitimate safety and

security concerns.  Given the information Defendant obtained in investigating Plaintiff, it was

not unreasonable for Defendant to identify Plaintiff as a "suspected" Juggalo in prison records.

But that is where Defendant's involvement stopped.  Defendant had no role in later decisions to

transfer Plaintiff to the Juggalo section in the Elm Unit, and Defendant had no involvement in

the later disciplinary write-ups and security re-classification that led to Plaintiff's transfer to

more restrictive Level II housing.  Given Defendant's tangential role in Plaintiff's housing

assignments, Defendant is entitled to qualified immunity and summary judgment on Plaintiff's

due-process claims.

Even if Plaintiff could have shown that Defendant had more of an affirmative role in the

housing decisions, the general rule in the Tenth Circuit, is that inmates do not have a protected

liberty interest in a particular housing assignment or security classification.  Absent such liberty

interest, due process beyond the very basic procedures is not triggered.  _Levoy v. Mills_, 788 F.2d

1437, 1440 (10th Cir. 1986) ("The Constitution does not, in and of itself, create any protected

liberty interest in a particular confinement status.").  Even changing an inmate's security

classification "ordinarily does not deprive him of liberty, because he is not entitled to a particular

degree of liberty in prison" and an inmate has no liberty interest in remaining in general

population.  _See Templeman v. Gunter,_ 16 F.3d 367, 369 (10th Cir. 1994); _see also Anderson v._

_Cunningham_, No. 08-1349, 2009 U.S. LEXIS 6840, at *12 (10th Cir. March 30, 2009) (holding

confinement to housing unit for 45 days with alleged loss of access to exercise facilities asserted

no liberty interest); _Jackson v. Ward_, No. 05-5004, 2005 U.S. App. LEXIS 28070, at *5 (10th

Cir. Dec. 19, 2005) (stating inmate has no liberty interest in any particular classification or

assignment); _Harris v. Chabries_, No. 04-4139, 2004 U.S. App. LEXIS 22462, at *3 (10th Cir.,

No. 04-4139, Oct. 28, 2004) (concluding inmate failed to allege an atypical and significant hardship related to change in housing assignment).

Plaintiff also contends that he "has been denied the programming and mapping that is required for him to qualify for a parole date from the Board of Pardons." (Am. Compl. at ¶ 10.) But, as with housing and security classification, inmates do not have a constitutionally protected liberty interest in programming or rehabilitation. *See Paige v. Okla. Dep't of Corrs.*, No. 07-6101, 2007 U.S. App. LEXIS 21558, at *5 (10th Cir. Sept. 7, 2007) (unpublished) (holding no constitutional right to rehabilitation and "no protected property or liberty interest in accessing the parole process"). Accordingly, Plaintiff has no constitutional right to programming or parole and cannot argue any lack of access to these privileges rises to the level of a due-process violation. As a matter of law, Plaintiff has not stated a liberty interest that would trigger a due-process right and has failed to show that Defendant violated any such right. Accordingly, Defendant is entitled to qualified immunity.

### 2. Qualified Immunity Also Bars Plaintiff's Eighth Amendment Claim.

"[T]o succeed on an Eighth Amendment claim, a prisoner must show: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official was deliberately indifferent to his safety." *Murphy v. Colo. Dep't of Corrs.*, No. 09-1443, 2010 U.S. App. LEXIS 11418, at **15-16 (10th Cir. June 4, 2010) (unpublished) (citing *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). And, "the inmate must do more than show prison officials should have known of the risk of harm." *Id.* at *16. Instead, the prisoner "'must present evidence supporting an inference that [the individual defendants] actually knew about a substantial risk of serious harm to his safety.'" *Id.* (quotation marks & citations omitted).

7

Here, there is no allegation—let alone evidence—of any substantial risk of serious harm to Plaintiff, or any knowing, deliberate indifference by Defendant. Rather, Plaintiff's placement in Elm was to *protect* him from a perceived risk of harm due to his suspected gang affiliation. And while he remained a Level III inmate and was housed in Elm, his living conditions were arguably better than had he been in general population at that time, so any assertion of a substantial risk of harm is tenuous at best. (*See* Defendant's Motion for Summary Judgment, Docket Entry # 53, pp. 7–9 (indicating various privileges Plaintiff received while in Elm Section One as Level III inmate).)

Nor has Plaintiff shown that Defendant was deliberately indifferent. First, Defendant had nothing to do with--no affirmative link to--the DOC decision to segregate Juggalo inmates from other general population inmates. Instead, as a gang intelligence officer, Defendant simply interviewed Plaintiff and, based on the information Plaintiff gave him, identified Plaintiff as a suspected Juggalo. All events that followed (Plaintiff's housing assignment) were decided and implemented by others over whom Defendant had no control or authority. (Worley Decl. ¶¶ 14, 27.)

Even so, as a matter of law, an inmate's transfer to administrative segregation resulting, in part, from gang affiliation does not necessarily mean that prison administrators were deliberately indifferent to conditions with a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Nor is it, per se, "'atypical [of] . . . the ordinary incidents of prison life.'" *See Adams v. Negron*, No. 03-1110, 2004 U.S App. LEXIS 3558, at *4 (10th Cir. Feb. 25, 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (unpublished) (holding placement in highly structured, restrictive prison housing unit not deliberate indifference).

8

Rather, "[a]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 359 U.S. 460, 468 (1983). There is no evidence or issue of fact here suggesting Defendant had actual knowledge of any risk of harm arising from the UDOC executive decision to move Plaintiff to administrative segregation.

Plaintiff has not stated a constitutional claim against Defendant. As a matter of law, Plaintiff has no liberty interest at issue. If anything, his assignment to be housed in the Elm and Dogwood was arguably in Plaintiff's best interest at the time. There is no evidence Defendant was aware of a substantial risk of harm, or that he was deliberately indifferent to any implicit harm to Plaintiff. Accordingly, Defendant is entitled to qualified immunity.

### 3. The Law Is Not Clearly Established Such that Defendant Would Have Known He Was Committing Any Constitutional Violations.

In addition, qualified immunity is appropriate because there is no clearly established law holding that assessing, categorizing or segregating an inmate due to his suspected gang affiliation violates a constitutional right. To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (citation omitted). The inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). The cases cited above show the opposite: that Defendant was well within constitutional boundaries and Plaintiff was not deprived of due process.

Even "officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the

facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). At

minimum, Defendant had reason to identify Plaintiff as being affiliated with the Juggalo gang.

No clearly established law put Defendant "on fair notice that the described conduct was

unconstitutional." *Pierce*, 359 F.3d at 1298. Thus, because the evidence indicates that

Defendant's actions were objectively reasonable, he is entitled to qualified immunity. *Mecham*

*v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007).

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

(1) For the same reasons stated in the Court's denials of Plaintiff's earlier motions for

appointed counsel, (*see* Docket Entry #s 18, 28 & 49), Plaintiff's fifth motion for appointed

counsel is also **DENIED**. (*See id.* # 57.)

(2) Defendant's Motion for Summary Judgment is **GRANTED**. (*See id.* # 53.)

(3) This case is **CLOSED**.

DATED this 26th day of March 2015.

BY THE COURT:

DEE BENSON
United States District Judge